McKAY v. BEARD.

1. After the legislature has duly chartered a corporation, which is composed of only two persons, and the corporation has entered upon the work for which it was established, appointed an agent, expended large sums of money and done acts which are lawful only by virtue of its charter, it is too late to say that such corporation had never accepted the charter or been organized as such, even though it does not appear that there was ever any formal organization by a meeting of the corporators and an election of the usual officers.

2. Where an agreement was entered into by two persons constituting a corporation, that each was to contribute one-half of the expense incurred in carrying on the work, the profits of which were to be divided equally between them, but no debts to strangers were to be contracted without the consent of both corporators, it did not constitute the by-laws of the company, but a contract under which one would be personally liable for half of the excess furnished by the other under such agreement.

3. The refusal of one of the parties to be any longer bound by such agreement, did not work a dissolution of the corporation.

4. For necessary work done for the corporation by one of the corporators after the abrogation of this agreement, the corporation itself would be liable,

but not its members individually; and for the payment of such indebtedness, the property and franchises of the company should be sold, and not simply the interest therein of the other corporator.

5. The corporation as such, should be a party to this action.

---

Before Kershaw, J., Kershaw, September, 1882.

Action by J. W. McKay against W. J. Beard, commenced June 8th, 1881. The opinion states the case, but it will be proper to add to that statement a copy of a notice published once a week for three weeks, commencing May 20th, 1880, in the "Darlington News," as defendants, in their argument, laid stress upon this notice. It was in testimony that the defendant assented to the publication. The notice was as follows:

Legal Notice.—For the information of all interested, we would state that although W. J. Beard has sold and conveyed to the undersigned, J. W. McKay, one-half interest in the "Lynch's Creek Navigation Company," yet said company has not been formally organized; neither is there any copartnership existing between the said Beard & McKay; consequently neither of said parties, their agents, clerks, or any one else, has any right or authority to make or assume any contracts or liabilities in the name, for the use, or on account of said Lynch's Creek Navigation Company, without the approval in writing of each of the said parties.

J. W. McKAY.

. By the consent and approval of W. J. Beard.

The Circuit decree was as follows, omitting its statement of facts:

In the complaint it is alleged that the company was never organized under the charter, and this is admitted by the answer; but as this allegation and admission can amount to no more than a legal deduction from the acts of the parties, the court must look into the facts and declare whether or not that was a proper deduction, and determine whether, as matter of law, the company did not go into operation under the act, in order properly to determine the rights of the parties resulting from the actual law

of the case, rather than from the relations which they supposed to exist between them.

There was no formal act of organization, but the agreement between the parties to do the work required of them by the charter, in order to secure the privileges granted, which were highly valuable (if the enterprise should succeed) and very unusual and important, may have had the effect of an organization of the company, whether or not it was so intended. If there was no corporation in existence, every step taken by the parties to deepen the channel of the creek, blasting, digging the soil, cutting out the timber, &c., to remove the obstacles to navigation, was a trespass against the riparian proprietors without warrant of law.

I must consider that those acts were done under the charter, and by virtue of the authority therein conferred. It seems to be well settled that "if the persons or association to whom a grant of corporate privileges is tendered, proceed to act under it, this is an acceptance of the charter, and the contract between the State and the corporators is complete, and the doing of acts by persons acting in the usual way of corporate agents, and which would not be consistent except upon the theory of acceptance, would be evidence of it." So, likewise, the exercise of powers granted by an amendment of a charter of a corporation is evidence of an acceptance of the amendment by a corporation. And when a charter, or amended charter, is once accepted, no subsequent withdrawal of the corporators therefrom, can affect the obligations imposed thereby. *Field Corp.*, §§ 29, 30, 32.

But we are not left to inference from the acts of the parties under the charter; for the deed assigning one-half interest in the company to the plaintiff, makes it manifest that these parties dealt with it as an existing corporation. The defendant in said deed conveys one-half interest "in the property, rights and franchises which were granted to me, and such other persons as I may associate with me, my or our successors as a body, corporate and politic, by the name and style of The Lynch's Creek Navigation Company, together with all the powers, rights and privileges connected therewith and incident thereto, and I do hereby associate the said John W. McKay with me as a member of said company, with one-half interest therein from and after the date

of these presents, free and clear from any and all incumbrance whatsoever." The plaintiff had no rights under this deed, but as a member of the company and upon his acceptance thereof he became a corporator with the defendant, and the law of their relation as such attached to them. The agreement they entered into was entirely consistent with this view of the subject; and necessary and proper under the charter.

Regarding them as corporators, it will follow that the defendant is not liable personally for any expenditures or work done under the charter not authorized, or consented to, by him as he would have been had they been copartners. The money expended on the work is to be considered as having been contributed to the capital stock of the company, for stock is the money or capital invested in the business of a corporation. Whenever payments are required to be made to the stock of a company, if the charter is silent, it must be authorized by a majority of stockholders or the members will not be responsible for their proportions thereof. "No act can be directly done by a corporation, except through the voice or vote of its members, who, in this respect, by a fiction of the law, are supposed to represent the ideal and fictitious corporate body of which they are members." *Field Corp.*, § 184.

The expenditures up to April 18th, 1881, appear to have been made with the consent of both parties, and having been therefore duly authorized, the defendant is liable for his share of the same. And it is understood that his liability to that extent is not denied. But the expenditures upon the work after that time were made by the plaintiff without the consent of the defendant. The work appears to have been not only proper, but necessary in order to secure the privileges granted by the charter and to render the enterprise profitable. Under these circumstances, while the defendant cannot be held personally liable for his share of those expenditures, yet it would be inequitable to permit him to enjoy equally with the plaintiff the benefit derived from them by the corporation, and at the same time relieve him from all liability. They constitute an equitable charge upon his interest in the company, and that interest will be appropriated to re-imburse the plaintiff for those expenditures to the extent of defend-

ant's proportion thereof, but beyond this plaintiff can have no relief against defendant in this regard.

It is, therefore, ordered, adjudged and decreed, that the defendant pay the plaintiff the sum of $926.69, and that plaintiff have leave to enter a judgment therefor, and to enforce the same by execution; that the interest of the defendant in The Lynch's Creek Navigation Company, being one-half thereof, be sold by the master. * * * That out of the proceeds of such sale, he do pay the costs and disbursements of both parties herein, to be adjusted by the clerk, first deducting the costs and expenses of sale; next, that he pay plaintiff from the remainder of the proceeds of said sale the sum $3,605.44, with interest from the date of this decree; next, that he do pay from said proceeds of sale, if any remain, the sum of $926.69 upon the judgment hereinbefore authorized to be entered against the defendant, and if any balance remain, that he pay the same to the defendant. That if the plaintiff become the purchaser of said interest of defendant, the master do take his receipt for so much of the purchase-money as may be payable to him under this decree, the plaintiff paying the remainder in cash.

*Messrs. Kennedy & Nelson* and *W. H. R. Workman,* for appellant.

*Messrs. J. T. Hay* and *T. H. Clarke,* contra.

November 2d, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. On March 1st, 1878, the legislature granted a charter to "William J. Beard and such other persons as he may associate with him, their successors and assigns," who were constituted a body politic and corporate by the name and style of "The Lynch's Creek Navigation Company." 16 *Stat.* 382. The object of said company was to improve the navigation of said creek by clearing out obstructions and to carry on a general transportation business on its waters.

Some time in October, 1879, the said Beard, the defendant in this action, by a formal deed sold and conveyed to the plaintiff

a one-half interest in the franchises and property of said corpo-
ration, and associated the plaintiff with him as one of the
corporators. On the same day the plaintiff and defendant
entered into a special verbal agreement, by which each was to
contribute one-half of the expenses incurred in carrying on the
work, the profits of which were to be. divided equally between
them; but no debts to outside persons were to be contracted
without the consent of both of said parties. It does not appear
that any formal organization of the company was ever effected
by the election of officers, adoption of by-laws, &c., as is usually
done by incorporated companies; but they appointed one E. H.
McNeill agent and treasurer, who kept the books and credited
each of the said parties with the money and supplies furnished
by them respectively for the purpose of carrying on the work,
and no debts to outsiders seem to have been contracted.

The business was carried on in this loose way until some time
in April, 1881, when, the defendant becoming dissatisfied, the
special agreement hereinbefore referred to was abrogated, but no
steps were taken by either party towards a formal dissolution of
the corporation or winding up its affairs. On the contrary, the
business was still carried on up to the time of the commence-
ment of this action and afterwards, McNeill continuing to act as
agent and treasurer, keeping an account of the receipts and dis-
bursements. It appears that up to April, 1881, when the special
agreement was terminated, the defendant was indebted to the
plaintiff under that agreement in the sum of $926.69, and that
the balance due for money and supplies furnished by the
plaintiff after that time and up to August 21st, 1882, when the
last report of the master was made, after allowing all credits for
freights received and correcting certain obvious errors in the
calculation of the freight on staves transported for Webb &
Davis, and for Commander, was $7,210.88, for one-half of
which it is claimed that defendant is liable.

The Circuit judge held that, while there was no formal organi-
zation of the company, yet the conduct of the corporators, in
going to work under their charter, and especially the terms of
the deed by which the defendant associated the plaintiff with him

L

as a member of the company, amounted to an acceptance of the charter, and was a sufficient organization of the company to constitute the relation of corporators between them, and that the special agreement by which the work was to be done at the joint expense of said parties, each being liable for one-half thereof, was entirely consistent with such relation. He, therefore, held that the defendant was personally liable to the plaintiff for the said sum of $926.69; but that for all expenditures made after the termination of the special agreement, he could not be made personally liable, and that one-half of such expenditures, to wit, the sum of $3,605.44, was an equitable charge upon the share of the defendant in the company, to the payment of which such share should be subjected. Accordingly, he rendered judgment against the defendant personally for the said sum of $926.69, and ordered that the interest of the defendant in said company be sold, and the proceeds applied, first, to the payment of the costs of these proceedings, as well as the expenses of such sale; next, to the payment of the said sum of $3,605.44 to the plaintiff; next, to the payment of the aforesaid judgment for $926.69; and that any balance that may remain should be paid to the defendant.

From this judgment defendant appeals upon the following grounds:

1. "His Honor erred in his finding that a corporation was organized between plaintiff and defendant under the charter granted defendant.

2. "If his Honor is correct in his conclusion that a corporation was formed, then he should have found that the agreement between them constituted the only rules or by-laws by which they were to be governed.

3. "His Honor erred in not finding that, by this agreement, when defendant dissented from a further continuance of the work on said creek after April, 1881, it was a dissolution of said corporation, and all work done by plaintiff subsequent to that date was done at plaintiff's own risk; and defendant's share in said franchise is not chargeable therefor.

4. "His Honor erred in giving personal judgment against defendant for the sum of $960 (?)—amount found to be due

April, 1881. It should have been made an absolute and not contingent charge on defendant's share on final settlement between them.

5. "His Honor erred in not ordering a sale of the shares of both parties instead of defendant's share alone.

6. "His Honor erred in not decreeing, in order that an equitable settlement might be effected, that the enhanced value of the said stream for navigable purposes, if any, between April, 1881, and the date of the charge made by plaintiff for the work put on it subsequent to that time, be ascertained, and the share of defendant for such enhanced value, together with amount due plaintiff up to April, 1881, be deducted from the sale of the entire property, and the balance of amount realized from the sale should be divided equally between them."

The first ground of appeal is, we think, sufficiently answered by the reasoning employed and the authority cited by the Circuit judge, to which, however, we may add a reference to *Ang. & A. Corp.*, § 83. After a corporation, duly constituted by act of the legislature, which corporation is composed of only two persons, has entered upon the work for which the corporation was established, appointed an agent, expended large sums of money on such work, and done acts which it would not have been lawful to do but for the charter granted by the legislature, it is too late to say that such corporation had never accepted the charter, or been organized as such, even though it does not appear that there was ever any formal organization by a meeting of the corporators and an election of the usual officers.

The second and fourth grounds of appeal, which may be considered together, rest upon a misconception of the scope and effect of the special agreement entered into by the parties after the plaintiff had been, by the formal deed of the defendant, admitted as a member of the company, which the act of legislature had declared should be a body politic and corporate by the name and style of "The Lynch's Creek Navigation Company." The corporation thus created having no cash capital, it was necessary that the money required to carry on the work should be obtained in some way. This could have been done either by borrowing it on the credit of the corporation from some third person or

from the individual corporators. The former mode was not, and perhaps could not have been pursued, as the corporation, having no cash capital and no property, except its franchises, would not be likely to have any credit. Hence, the other mode was resorted to ; and the special agreement was entered into whereby the work was to be carried on at the joint expense of the parties, each being liable for one-half of such expense. This amounted, practically, to the same thing as if the money necessary to carry on the work had been borrowed from a third person on the individual credit of the parties, and their joint note had been given for the amount borrowed, each being liable as between themselves for one-half thereof.

This, it seems to us, is the true view of the scope and effect of the special agreement; and we are unable to see how it can be regarded as constituting the by-laws of the corporation. There is nothing whatever in the nature of the agreement, or in any of the evidence offered, which shows that such agreement was ever designed to constitute the by-laws of the corporation ; but, on the contrary, we think it plain that the sole purpose of the agreement was to raise the means necessary to carry on the work without contracting any liabilities to outsiders. This being so, the effect of the agreement was the same as if the parties had given their joint note to a third person for the amount furnished by him to carry on the work, upon which each of the said parties, as between themselves, should be liable for one-half. Now, if such note had been given, and the whole amount of it had been paid by the plaintiff, could it, for a moment, be questioned that the defendant would be personally liable to the plaintiff for one-half of the amount so paid? And, in our judgment, there is as little doubt that he is personally liable to the plaintiff for one-half of the excess furnished by plaintiff under the special agreement for the purpose of carrying on the work. The second and fourth grounds of appeal cannot, therefore, be sustained.

It is very difficult for us to understand, with our view of the scope and effect of the special agreement, how it can be contended that when such special agreement was abrogated by the refusal of the defendant to be any longer bound by its terms, a dissolu-

tion of the corporation was thereby effected. As we have seen, the agreement was a matter outside the corporation and altogether a private and personal arrangement between the plaintiff and the defendant; and, therefore, even if a corporation could be dissolved in this way, we do not see how the abrogation of such an agreement could possibly have any effect whatever upon the corporation as such, except, perhaps, by crippling its means of carrying on the work for which it was constituted; and, as the event has proved, even that effect was not experienced. We are unable to see, therefore, how the third ground of appeal can be sustained.

The sixth ground of appeal is manifestly based upon the theory that the corporation was never actually established, and that the parties stood toward each other in the relation of tenants in common, and, hence, a rule supposed to be applicable to that relation is sought to be applied here. But, as we have seen, this is an entire misconception of the relations of the parties, and, hence, there is no basis upon which to rest this ground of appeal.

The fifth ground of appeal presents greater difficulties. After the abrogation of the special agreement in April, 1881, the corporation was thrown upon its own resources; and if the work was to be continued, as it should have been under the charter, it must have been carried on upon the credit of the corporation. The amount furnished by the plaintiff after that time for carrying on the work, as the corporation in good faith was bound to do, constituted a debt of the corporation for which neither of the corporators could be held individually liable, and the plaintiff's claim, therefore, was against the corporation as such, and not against the defendant individually, or against his interest in the company. It seems to us, therefore, that for the payment of such claim, the whole property and franchises of the corporation, or so much thereof as might be necessary for the purpose, should have been ordered to be sold, and not merely the interest of one of the corporators. For, besides the fact that an undivided interest in property of this kind would not be likely to bring its full value at a public sale, the debt which has rendered the sale necessary is, as we have seen, the debt of the corporation, and not of the individual member whose interest has been ordered to be sold, and, hence, for the enforcement of

the payment of such debt the property of the corporation should be sold.

The rights and interest of the plaintiff can be and should be fully protected by providing, as the Circuit judge did provide, that if the plaintiff becomes the purchaser the master shall take as cash his receipt for so much of the purchase-money as he may be entitled to under the decree that shall be made, he paying in cash a sufficient amount to satisfy the costs of these proceedings and the expenses of the sale. The proceeds of the sale should be applied, first, to the payment of such costs and expenses; next, to the payment of the amount due to plaintiff for money and supplies furnished to carry on the work since the abrogation of the special agreement in April, 1881, and the balance, if any, be equally divided between the plaintiff and defendant, the share of the defendant in such balance to be subjected to the payment of the personal judgment against him for $926.69 hereinabove mentioned.

It may be that the work has been continued since the last report of the master, and that the corporation has incurred further liabilities to the plaintiff, and has received further income from the transportation of freight and passengers, and that it may be proper to have a further reference to adjust these matters; but as the case must go back to the Circuit Court, we do not decide anything on these points, but leave them for that court to determine.

Although all persons interested in the corporation are now before the court, yet they are parties only as individuals; and under the view which we have taken it will be proper, in order to have the record technically correct, that the corporation as such should be made a formal party. Leave is therefore granted to the plaintiff to amend accordingly.

The judgment of this court is that the judgment of the Circuit Court, except as modified herein, be affirmed, and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.